# EXHIBIT 2

# APPLICABILITY OF THE FOREIGN INTELLIGENCE SURVEILLANCE ACT'S NOTIFICATION PROVISION TO SECURITY CLEARANCE ADJUDICATIONS BY THE DEPARTMENT OF JUSTICE ACCESS REVIEW COMMITTEE

*The notification requirement in section 106(c) of the Foreign Intelligence Surveillance Act generally applies when the Department of Justice intends to use information obtained from electronic surveillance against an aggrieved person in an adjudication before the Access Review Committee concerning the Department's revocation of an employee's security clearance.*

*Compliance with the notification requirement in section 106(c) of the Foreign Intelligence Surveillance Act in particular Access Review Committee adjudications could raise as-applied constitutional questions if such notice would require disclosure of sensitive national security information protected by executive privilege.*

June 3, 2011

## MEMORANDUM OPINION FOR THE CHAIR AND MEMBERS OF THE ACCESS REVIEW COMMITTEE

Section 106(c) of the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1806(c) (2006), requires the Government to notify an "aggrieved person"—that is, a person who was the target of electronic surveillance or whose communications or activities were subject to electronic surveillance, *see id.* § 1801(k)—whenever the Government intends to use "against" that person any information "obtained or derived from [such] electronic surveillance of that aggrieved person" in any "trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States."  You have asked whether this notification requirement applies when the Department of Justice intends to use information obtained from such electronic surveillance against an aggrieved person in an adjudication before the Access Review Committee ("ARC") concerning the Department's revocation of an employee's security clearance.[1]  In accord with views we received from the Department's Justice Management and National Security Divisions, we conclude that the notification requirement generally applies to such adjudications.[2]  But, as we explain below, compliance with the notification requirement in particular ARC adjudications could raise as-

---

[1] *See* Memorandum for David Barron, Acting Assistant Attorney General, Office of Legal Counsel, from Mari Barr Santangelo, Chair, Access Review Committee, et al., *Re:  Request for Opinion* (Jan. 26, 2010) ("*Request for Opinion*").

[2] *See* E-mail for Daniel L. Koffsky, Deputy Assistant Attorney General, Office of Legal Counsel, from Stuart Frisch, General Counsel, Justice Management Division, *Re:  ARC request* (Apr. 2, 2010); E-mail for Daniel L. Koffsky, Deputy Assistant Attorney General, Office of Legal Counsel, from Todd Hinnen, Deputy Assistant Attorney General for Law and Policy, National Security Division, *Re:  NSD Views Regarding the Applicability of 1806's Notification Provision to Access Review Committee Proceedings* (Mar. 31, 2010).  We also received views from the Federal Bureau of Investigation ("FBI") that did not take issue with the position that section 106(c) applies to ARC adjudications, but that raised other, related issues, two of which we respond to below in note 3 and at pages 7-8.  *See* Memorandum for the Acting Assistant Attorney General, Office of Legal Counsel, from Valerie Caproni, General Counsel, Federal Bureau of Investigation, *Re:  Request for an OLC Opinion Dated January 26, 2010 by ARC* (Aug. 9, 2010) ("Caproni Memo").

*Opinions of the Office of Legal Counsel in Volume 35*

applied constitutional questions if such notice would require disclosure of sensitive national security information protected by executive privilege.

### I.

Section 106(c) of FISA provides:

> Whenever the Government intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to the authority of this subchapter, the Government shall, prior to the trial, hearing, or other proceeding or at a reasonable time prior to an effort to so disclose or so use that information or submit it in evidence, notify the aggrieved person and the court or other authority in which the information is to be disclosed or used that the Government intends to so disclose or so use such information.

50 U.S.C. § 1806(c).  Section 106(e), in turn, provides that the aggrieved person "may move to suppress the evidence obtained or derived from such electronic surveillance on the grounds that—(1) the information was unlawfully acquired; or (2) the surveillance was not made in conformity with an order of authorization or approval."  *Id*. § 1806(e).

You have asked us to assume, for purposes of our analysis, that a Department component has revoked an employee's security clearance; that the loss of security clearance caused the component to discharge the employee; that the employee has appealed the component's security-clearance revocation decision to the ARC; and that, in the course of the ARC adjudication, the Department intends to justify the clearance revocation with the use of information it has "obtained . . . from an electronic surveillance" of communications that involved the employee.[3] *Id*. § 1806(c).  Accordingly, we will assume that the employee in question would be an "aggrieved person" under section 106(c),[4] and that the Government would use "information obtained . . . from an electronic surveillance of" that aggrieved person "against" that person in the ARC adjudication.  *Id*.

The function of a security clearance for a Department employee is to designate the employee as someone who is eligible to be afforded access to classified information, in accordance with the standards set forth in part 3 of Executive Order 12968, 3 C.F.R. 391, 397

---

[3] Because the circumstances you posit involve the use of information obtained directly from the electronic surveillance in question, we need not address the language in section 106(c) that also makes the section applicable when information has been "derived from" electronic surveillance.

[4] Section 101(k) of FISA defines an "aggrieved person" as a "person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance."  50 U.S.C. § 1801(k).  In other words, "aggrieved person[s]" include only those persons targeted by the surveillance and others who are parties to communications subject to surveillance; as explained in a FISA House Report, "[t]he term specifically does not include persons, not parties to a communication, who may be mentioned or talked about by others."  H.R. Rep. No. 95-1283, pt. I, at 66 (1978).

*Applicability of FISA's Notification Provision to Security Clearance Adjudications*

(1996). *See* 28 C.F.R. § 17.41(a)(1) (2010). Executive Order 12968 provides in relevant part that eligibility for access to classified materials may be granted only to those employees

> for whom an appropriate investigation has been completed and whose personal and professional history affirmatively indicates loyalty to the United States, strength of character, trustworthiness, honesty, reliability, discretion, and sound judgment, as well as freedom from conflicting allegiances and potential for coercion, and willingness and ability to abide by regulations governing the use, handling, and protection of classified information.

Exec. Order No. 12968, § 3.1(b), 3 C.F.R. at 397. The Executive Order requires that departments and agencies reinvestigate employees on a periodic basis, and it authorizes additional reinvestigation "if, at any time, there is reason to believe" that an employee "may no longer meet the standards for access established" by the Order. *Id*. § 3.4(b), 3 C.F.R. at 399.[5] The applicable Department of Justice regulations accordingly provide that "[e]ligibility shall be granted only where facts and circumstances indicate access to classified information is clearly consistent with the national security interests of the United States and any doubt shall be resolved in favor of the national security." 28 C.F.R. § 17.41(b).[6]

If a Department component denies an employee a security clearance—that is, if the component determines that the employee is not eligible for access to classified information—or if the component revokes such eligibility, the component must provide the employee "with a comprehensive and detailed written explanation of the basis" for the decision, to the extent that "the national security interests of the United States and other applicable law permit." *Id*. § 17.47(a)(1). The component must also inform the employee that she has a right, at her own expense, to be represented by counsel or another representative of her choice. *Id*. During the thirty days following the date of the component's written explanation of the clearance denial, the employee may request any "documents, records or reports" from the security clearance investigation, "including the entire investigative file upon which [the] denial or revocation [was] based," *id*. § 17.47(a)(2), and within thirty days of such a request the employee must receive copies of the requested materials to the extent such materials would have been provided if requested under the Freedom of Information Act or the Privacy Act and "as the national security interests and other applicable law permit." *Id*. § 17.47(a)(3). Thirty days after receiving the written explanation of the denial or the requested documents under § 17.47(a)(3)—whichever is later—the employee may file a written reply and request a review of the adverse determination.

---

[5] In 2008, section 3(b) of Executive Order 13467 amended Executive Order 12968 in several respects, including by adding a new section 3.5 that provides for "continuous evaluation" of individuals determined to be eligible for access to classified information. *See* 3 C.F.R. §§ 196, 201 (2009). None of the 2008 amendments is germane to our analysis here.

[6] *Eligibility* for access to classified information—i.e., having a security clearance—does not mean that an employee will necessarily be afforded access to such information. Both Executive Order 12968 and the Department's regulations provide that eligibility for access is merely one prerequisite to actual access. In particular, an employee may not be provided access to such information without a demonstrated "need-to-know," *see* Exec. Order No. 12968, § 1.2(a) & (c)(2), 3 C.F.R. at 392; 28 C.F.R. § 17.41(a)(2), and agencies must "ensure that access to classified information by each employee is clearly consistent with the interests of the national security," Exec. Order No. 12968, § 1.2(b), 3 C.F.R. at 392; *accord* 28 C.F.R. § 17.41(c).

*Opinions of the Office of Legal Counsel in Volume 35*

*Id*. § 17.47(b). Thereafter, the employee must be provided a written notice of the results of the requested review, including the reasons for the results, along with the identity of the deciding authority and notice of the right to appeal an adverse decision to the ARC. The employee then may, within thirty days of receiving that written notice, appeal an adverse decision to the ARC and may request the opportunity to appear personally before the ARC and to present relevant documents, materials, and information. *Id*. § 17.47(d). The Department Security Officer must also be afforded an opportunity to present relevant materials to the ARC in support of the security clearance denial or revocation, and may appear personally if the employee does so. *Id*. § 17.47(g).

The ARC is composed of the Deputy Attorney General, the Assistant Attorney General for National Security, and the Assistant Attorney General for Administration—each of whom may name a designee, subject to the Attorney General's approval. *See* 28 C.F.R. § 17.15(b). When an employee appeals an adverse security clearance decision, the ARC must make a written "determination of eligibility for access to classified information . . . as expeditiously as possible." *Id*. § 17.47(f). Although the regulations describe this determination as a "discretionary security decision" by the ARC, they also mirror the regulations governing the component's initial decision by providing that the ARC may conclude that an employee should be granted eligibility for access to classified materials "only where facts and circumstances indicate that access to classified information is clearly consistent with the national security interest of the United States"; any doubt is to be "resolved in favor of the national security." *Id*. The ARC's decision is final unless the Attorney General requests a recommendation from the ARC and "personally exercises appeal authority." *Id*. § 17.15(a).

## II.

Because the ARC is composed of three high-ranking Department officials or their designees and its decisions are final unless the Attorney General personally exercises appeal authority over them, an ARC adjudication challenging revocation of a security clearance takes place before a "department, officer[s], . . . or other authority of the United States." 50 U.S.C. § 1806(c); *see* 28 U.S.C. § 501 (2006) ("[t]he Department of Justice is an executive department of the United States"); *see also Dong v. Smithsonian Inst.*, 125 F.3d 877, 881 (D.C. Cir. 1997) ("At the very least . . . it seems logical that for an entity to be an authority of the government it must exercise some governmental authority.") (emphasis omitted); *Webster's Third New International Dictionary* 146 (1993) (defining "authority" as "superiority derived from a status that carries with it the right to command and give final decisions"). Thus, section 106(c)'s notification requirement would generally be applicable in an ARC adjudication if that adjudication is a "trial, hearing, or other proceeding." 50 U.S.C. § 1806(c). Although we are not aware of any judicial precedent discussing whether an employment-related administrative process such as an ARC adjudication would be a "trial, hearing, or other proceeding" for purposes of either section 106(c) or analogous, similarly worded notice statutes, we believe the ordinary meaning of the statutory language encompasses such an adjudication, and the legislative history is consistent with our understanding.

We consider first whether the ARC process is a "proceeding" within the meaning of section 106(c). *Id*. The term "proceeding" has several broad definitions, including, most

importantly for present purposes, a "procedural means for seeking redress from a tribunal or agency." *Black's Law Dictionary* 1324 (9th ed. 2009); *see also Webster's Third New International Dictionary* at 1807 (defining "proceeding" as "a particular step or series of steps adopted for doing or accomplishing something"); *Random House Dictionary of the English Language* 1542 (2d ed. 1987) (defining "proceeding" as "a particular action or course or manner of action"). In order for that term to have some independent effect in section 106(c)—which we assume Congress intended, *see, e.g.*, *Carcieri v. Salazar*, 129 S. Ct. 1058, 1066 (2009) ("'we are obliged to give effect, if possible, to every word Congress used'") (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979))—the term "other proceeding" in section 106(c) is best read to include processes "before any court, department, officer, agency, regulatory body, or other authority of the United States" that are distinct from, and in addition to, trials and hearings. *See* 50 U.S.C. § 1806(c). The reference to proceedings before a "department, officer, agency, regulatory body, or other authority" strongly suggests that Congress did not intend to limit the application of this provision to judicial proceedings. *See id*. Accordingly, although we need not determine the outer bounds of the meaning of "proceeding," the breadth of the dictionary definition of the term and the surrounding text in section 106(c) lead us to believe that "proceeding" would encompass the ARC's process for adjudicating an appeal from a decision by a Department of Justice component to revoke an employee's security clearance.

The legislative history is consistent with this broad reading of "proceeding." When proposed legislation concerning electronic surveillance for foreign intelligence purposes was introduced in 1976, the original version of section 106(c) would have limited its scope to a "trial, hearing, or other proceeding in a Federal or State court," S. Rep. No. 94-1035, at 64 (1976); S. Rep. No. 94-1161, at 41, 65 (1976). When a revised version of the bill was introduced in the next Congress, the language was altered to cover non-judicial proceedings expressly, *see* S. Rep. No. 95-604, at 56 (1977) ("This provision has been broadened in S. 1566 over its counterpart in S. 3197 by including non-judicial proceedings.").[7] To be sure, some of the language used in the relevant congressional reports echoes language used in the context of trials or court proceedings. *See, e.g.*, H.R. Rep. No. 95-1720, at 31 (1978) (Conf. Rep.) (explaining that the Senate bill "provided for notification to the court when information derived from electronic surveillance is to be used in legal proceedings"); *id*. (explaining that early notice would allow for "the disposition of any motions concerning evidence derived from electronic surveillance"); S. Rep. No. 95-701, at 62 (1978) (explaining that the notice provision, as well as the provisions governing motions for suppression, "establish the procedural mechanisms by which such information may be used in *formal* proceedings") (emphasis added); H.R. Rep. No. 95-1283, pt. I, at 89 (1978) (same). Nevertheless, Congress's decision to eliminate the reference to federal or state courts in the statutory provision, coupled with the legislative history's explicit

---

[7] The relevant draft statutory language discussed in Senate Report 95-604 is similar, although not identical to, the language actually passed a year later. The revised language proposed in 1977 did not explicitly include proceedings before a "regulatory body," and would have applied not only to authorities of the United States, but also to those of a State or political subdivision. *See* S. Rep. No. 95-604, at 80. In 1978, the House Permanent Select Committee on Intelligence proposed the language that was adopted later that year and remains the current statutory text—adding the reference to "regulatory body" and focusing the section on federal authorities. *See* H.R. Rep. No. 95-1283, pt. I, at 9 (1978). Although the House Report setting out the language of section 106(c) as finally adopted explains that the notice requirements are imposed on the States through a separate section, it does not provide a reason for the change, nor does it explain the reason for the addition of the term "regulatory body." *See id*. at 89.

statement that the terms "trial, hearing, or other proceeding" were not limited to judicial proceedings, indicates that references to legal proceedings in the legislative history should not be understood as limiting section 106(c)'s reach to court proceedings.[8]

In sum, Congress's expansion of the language of section 106(c) supports the broad reading indicated by the plain meaning of the phrase "other proceeding,"[9] and we conclude that an ARC adjudication of a Department component's revocation of an employee's security clearance is an "other proceeding" within the meaning of FISA's notification provision.[10] Section 106(c) thus generally requires the Government to notify an "aggrieved person" when it intends to use information "obtained or derived from . . . electronic surveillance of that aggrieved person" against that person in such an ARC adjudication.[11]  50 U.S.C. § 1806(c).

---

[8] Analogous provisions in the statutory scheme governing wiretaps for law enforcement purposes also strongly suggest that Congress intended the phrase "trial, hearing, or other proceeding" to be quite broad.  In one provision, using language nearly identical in relevant part to that in section 106(c), Congress authorized any "aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States" to "move to suppress the contents" of interceptions.  18 U.S.C. § 2518(10)(a) (2006).  According to the legislative history, "the scope of the provision [wa]s intended to be comprehensive," although it would not include grand jury proceedings or Congressional hearings.  S. Rep. No. 90-1097, at 106 (1968).  The statutory scheme in the law enforcement context uses the narrower phrase—rejected in the FISA notification provision—"trial, hearing, or other proceeding in a Federal or State court" to require that certain information be provided to parties before the contents of a wiretap are used in such proceedings.  18 U.S.C. § 2518(9) (2006).  The legislative history of that provision makes clear that the phrase was limited to "adversary type hearings," and would not include a grand jury hearing.  S. Rep. No. 90-1097, at 105.

[9] Whether the term "proceeding" as used in section 106(c) refers only to an adversarial process is a question we need not decide.  *Cf. In re Grand Jury Proceedings*, 856 F.2d 685, 690 & n.9 (4th Cir. 1988) (concluding that notice under section 106(c) was not required in the grand jury context because Congress explicitly included grand juries in certain provisions governing domestic wiretaps, demonstrating that Congress "knew how to include grand jury investigations as proceedings before which notice must be given to overheard persons" and because the legislative history of the domestic wiretap provisions demonstrated that "the term 'proceeding' was limited to include only adversary hearings").  The ARC adjudication at issue here is distinguishable from a federal grand jury proceeding because it is an adversarial process in which both sides are provided an opportunity to present their cases to a decision-maker.  *See* 28 C.F.R. § 17.47.

[10] Because we conclude that the ARC process is an "other proceeding," we need not decide whether it is also a "hearing."  We note, however, that the term "hearing" can—and in federal law often does—refer to any "opportunity to be heard or to present one's side of a case."  *Webster's Third New International Dictionary* at 1044; *see also Black's Law Dictionary* at 788 (defining a "hearing" for purposes of administrative law as "[a]ny setting in which an affected person presents arguments to a decision-maker"); 1 Richard J. Pierce, Jr., *Administrative Law Treatise* § 8.2, at 708-12 (5th ed. 2010) (collecting and discussing decisions giving deference to various agency interpretations of statutory requirements for a "hearing").  Although the term may in some instances refer specifically to a particular stage of litigation, *see Black's Law Dictionary* at 788 (defining a "hearing" as "[a] judicial session, usu. open to the public, held for the purpose of deciding issues of fact or of law, sometimes with witnesses testifying"), or to the sort of formal, adversary process that ordinarily characterizes a trial, these are not its only meanings.  Thus, an ARC adjudication may be a "hearing" as well as a "proceeding."

[11] Section 106 does not specify the form of notice the Government must provide to an "aggrieved person." *See* David S. Kris & J. Douglas Wilson, *National Security Investigations and Prosecutions* § 27:11 (2007) (comparing section 106(c) to other statutory search notice requirements).  We have been informed that the ordinary Government practice is simply to state without elaboration that the United States intends to offer into evidence, or otherwise use or disclose, information obtained or derived from electronic surveillance conducted pursuant to FISA, and not in the first instance to provide any further information, such as the identity of the FISA target, what communications were intercepted, when the information was obtained, or what FISA information the government intends to use.  *See* Caproni Memo at 2-3.  You have not asked us to address the scope of the required notification.

*Applicability of FISA's Notification Provision to Security Clearance Adjudications*

## III.

Finally, we address a constitutional issue that bears on the statutory question you have asked. The FBI notes that the President's authority to control access to national security information, and thus to make security clearance determinations for Executive Branch employees, "flows primarily" from the President's constitutional powers, *Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988), and, further, that federal employees do not have a statutory or constitutional right to a security clearance, *see id.* at 528. In light of these premises, the FBI questions "whether Congress has the legal authority to impose restrictions on the Executive's authority and decision-making process in the security clearance context," and suggests that perhaps section 106(c) is therefore unconstitutional as applied to ARC adjudications. Caproni Memo at 1-2.

We agree with the FBI that the President's constitutional authority to classify information concerning the national defense and foreign relations of the United States and to determine whether particular individuals should be given access to such information "exists quite apart from any explicit congressional grant." *Egan*, 484 U.S. at 527; *see Whistleblower Protections for Classified Disclosures*, 22 Op. O.L.C. 92, 94-99 (1998) (statement of Randolph D. Moss, Deputy Assistant Attorney General, Office of Legal Counsel, before the House Permanent Select Committee on Intelligence). But that does not imply that Congress entirely lacks authority to legislate in a manner that touches upon disclosure of classified information. *See EPA v. Mink*, 410 U.S. 73, 83 (1973) ("Congress could certainly have provided that the Executive Branch adopt new procedures [concerning information required to be kept secret in the interest of the national defense] or it could have established its own procedures—subject only to whatever limitations the Executive privilege may be held to impose upon such congressional ordering."). For example, we believe Congress's authority to regulate foreign intelligence surveillance under FISA,[12] and to regulate the terms of federal employment,[13] does, as a general matter, permit

---

We note, however, that if the aggrieved person moves the relevant authority to suppress evidence or information obtained or derived from such electronic surveillance pursuant to section 106(e), section 106(f) authorizes the Attorney General to file an affidavit under oath to the district court in the same district as the authority stating "that disclosure or an adversary hearing would harm the national security of the United States." 50 U.S.C. § 1806(f) (2006). If the Attorney General files such an affidavit, the district court is to "review in camera and ex parte the application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted." *Id.*; *see also id.* § 1801(g) (2006) (defining "Attorney General" for purposes of FISA to include the Attorney General (or the Acting Attorney General); the Deputy Attorney General; and, upon designation by the Attorney General, the Assistant Attorney General for National Security).

[12] *See generally* Memorandum for Hon. Edward P. Boland, Chairman, House Permanent Select Comm. on Intelligence, from John M. Harmon, Assistant Attorney General, Office of Legal Counsel (Apr. 18, 1978), *in Foreign Intelligence Electronic Surveillance: Hearings on H.R. 5794, H.R. 9745, H.R. 7308, and H.R. 5632 Before the Subcomm. on Legis. of the H. Permanent Select Comm. on Intelligence*, 95th Cong. 31 (1978) (explaining that it would be "unreasonable to conclude that Congress, in the exercise of its powers in this area," could not grant courts the authority under FISA to approve the legality of the Executive's electronic surveillance); Statement on Signing S. 1566 into Law, 2 Pub. Papers of Jimmy Carter 1853-54 (Oct. 25, 1978) (explaining that FISA "clarifies the Executive's authority" and noting no constitutional objections to the Act).

[13] *See, e.g.*, *United Pub. Workers v. Mitchell*, 330 U.S. 75, 101 (1947); *Ex parte Curtis*, 106 U.S. 371, 372-73 (1882). Various statutes regulate the security clearance process more generally. *See* 50 U.S.C. §§ 435-438 (2006 & Supp. III 2009); 50 U.S.C. §§ 831-835 (2006) (governing employees of the National Security Agency).

*Opinions of the Office of Legal Counsel in Volume 35*

Congress to impose the notification requirement in section 106(c), even when that requirement reaches proceedings concerning security clearance revocations.

The doctrine of separation of powers, however, places some limits on Congress's authority to participate in regulating the system for protecting classified information. The key question in identifying such limits is whether Congress's action is "of such a nature that [it] impede[s] the President's ability to perform his constitutional duty." *Morrison v. Olson*, 487 U.S. 654, 691 (1988). Congress may not, for example, provide Executive Branch employees with independent authority to countermand or evade the President's determinations as to when it is lawful and appropriate to disclose classified information. *See Whistleblower Protections for Classified Disclosures*, 22 Op. O.L.C. at 100. And, as noted above, Congress's authority is "subject only to whatever limitations the Executive privilege may be held to impose upon such congressional ordering." *Mink*, 410 U.S. at 83 (citing *United States v. Reynolds*, 345 U.S. 1 (1953)).

Section 106(c), by reaching broadly to require notice in proceedings such as ARC adjudications, could give rise to as-applied constitutional concerns under this separation-of-powers framework. There may, for example, be cases in which providing notice under section 106(c) would effectively disclose sensitive national security information that is constitutionally privileged. *Cf. Whistleblower Protections for Classified Disclosures*, 22 Op. O.L.C. at 94-99 (noting historical examples of presidential claims of constitutional privilege to protect national security information). Given our understanding that the information provided when notice is required by section 106(c) is quite limited, *see supra* n. 11, we expect such as-applied concerns will arise infrequently.

/s/

CAROLINE D. KRASS
Principal Deputy Assistant Attorney General