UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **KAISER GILL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  15-824 (RMC) |
| | ) | |
| **DEPARTMENT OF JUSTICE,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**OPINION**

Plaintiff Kaiser Gill challenges the revocation of his security clearance by the Federal Bureau of Investigation (FBI) and Department of Justice (DOJ), alleging violations of his rights to Equal Protection and Due Process, and of the Foreign Intelligence Surveillance Act. Defendants have filed a motion to dismiss which is meritorious. The Complaint will be dismissed.

**I.  FACTS**

Mr. Gill was born in Pakistan and immigrated with his family to the United States in 1980. Compl. ¶ 8 [Dkt. 1]. He began working for the FBI in 2002, where he was required to qualify for security clearance. In 2003, Mr. Gill accessed the FBI's Automated Case Support system and searched for information on himself, his family, and friends.

In 2006, Mr. Gill disclosed to his supervisor that a family member was approached by the FBI and had contacted Mr. Gill about the incident. After this disclosure, Mr. Gill was required to take a polygraph test. Because his answers indicated deception, he was re-interviewed by the Security Unit, at which time he disclosed his previous unauthorized use of the

1

Case 1:15-cv-00824-RMC   Document 17   Filed 07/22/16   Page 2 of 17

FBI's Automated Case System system to run searches on friends and family members. The FBI suspended Gill in 2006 and temporarily revoked his security clearance.

The FBI permanently revoked Mr. Gill's security clearance in 2008 and terminated Mr. Gill "for violating FBI policy against unauthorized searches of its computer systems" and because his answers "lacked candor." *Id.* ¶ 24. Mr. Gill sought review of the decision to terminate, made by the FBI's Office of Professional Responsibility (OPR), by the Assistant Director of OPR, and on February 19, 2009, Mr. Gill received a hearing before the Assistant Director. However, in March 2009, the Assistant Director upheld the revocation of Mr. Gill's security clearance and his removal.

While the review by the Assistant Director of OPR was pending, on October 17, 2008, Mr. Gill appealed his removal and the revocation of his security clearance to the Access Review Committee (occasionally, Committee) of the DOJ. On April 30, 2009, the Access Review Committee held a hearing to assess Mr. Gill's claims. On April 2, 2014, it decided to affirm Mr. Gill's removal and the revocation of his security clearance.

The decision of the Access Review Committee was attached as Exhibit 1 to Mr. Gill's Complaint. Compl., Ex. 1 [Dkt. 1-2]. In it, the Committee recounted the background to revocation of Mr. Gill's security clearance, noting that it "was based upon information indicating that Mr. Gill had conducted a number of unauthorized searches of the FBI's Automated Case Support (ACS) System. The Security Division determined that this behavior posed a significant and unacceptable risk to the national security." *Id.* at 1. The Committee listed the "Basis for Denial of Security Clearance," to include foreign influence, personal conduct, criminal conduct, handling protected information, and use of the information technology system. *Id.* at 1-2. The Access Review Committee concluded that "Mr. Gill's admitted misconduct in accessing

2

sensitive information for personal reasons involving his family raises straightforward concerns regarding his ability to safeguard classified information and not disclose it for personal reasons." *Id.* at 4. Although the Committee noted that Mr. Gill appeared sincerely remorseful, it affirmed the FBI's decision to revoke his security clearance because "all doubts" on the question of whether Mr. Gill "will engage in similar future misconduct" had not been removed. *Id.*

Mr. Gill filed the instant Complaint on June 4, 2015, seeking judicial review of the decision on the revocation of his security clearance. *See* Compl. Mr. Gill alleges that (1) the Committee's decision violated the Equal Protection Clause because it was based on his race, religion, and national origin; (2) the Committee violated due process by failing to provide notice of the information it reviewed to support the decision to uphold his removal and the revocation of his security clearance; (3) the FBI violated the Foreign Intelligence Surveillance Act (FISA), 50 U.S.C. § 1801 *et seq.*, by not disclosing evidence it intended to use before the Access Review Committee to support the FBI's decisions to revoke Mr. Gill's security clearance and remove him; (4) the Committee violated Mr. Gill's rights to due process by misapplying the guidelines applicable to its review of the FBI's decisions; (5) the Committee's decision violated the Equal Protection Clause because it was based on his family's national origin; and (6) the Committee violated due process by improperly delaying its decision to uphold the revocation of Mr. Gill's security clearance.

Defendants DOJ and its constituent agency, the FBI (Defendants), move to dismiss the Complaint for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and, in the alternative, for its failure to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6). Mot. to Dismiss [Dkt. 10] (Mot.).

## II.  LEGAL STANDARD

### A.  Motion to Dismiss

#### 1.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move to dismiss a complaint, or any portion thereof, for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is both a statutory requirement and an Article III requirement.  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).  The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists.  *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (noting that federal courts are courts of limited jurisdiction and "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction") (internal citations omitted).

When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged.  *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004).  Nevertheless, "the Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions."  *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).  A court may consider materials outside the pleadings to determine its jurisdiction.  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005); *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).  A court has "broad discretion to consider relevant and competent evidence" to resolve factual issues raised by a Rule 12(b)(1) motion.  *Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 873 F. Supp. 2d 363, 368 (D.D.C. 2012) (citing 5B

Charles Wright & Arthur Miller, Fed. Prac. & Pro., Civil § 1350 (3d ed. 2004)); *see also Macharia v. United States*, 238 F. Supp. 2d 13, 20 (D.D.C. 2002), *aff'd*, 334 F.3d 61 (2003) (in reviewing a factual challenge to the truthfulness of the allegations in a complaint, a court may examine testimony and affidavits). In these circumstances, consideration of documents outside the pleadings does not convert the motion to dismiss into one for summary judgment. *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 21 (D.D.C. 2003).

### 2. Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]"). To survive a motion to dismiss, a complaint must contain sufficient factual information, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must assume the truth of all well-pleaded factual allegations and construe reasonable inferences from those allegations in favor of the plaintiff. *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). A court need not accept inferences drawn by a plaintiff if such inferences are not supported by the facts set out in the complaint. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Further, a court does not need to accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678. In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about

which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### B. Standing

Standing is part and parcel of Article III's limitation on the judicial power of the federal courts and extends only to cases or controversies. U.S. Const. art. III, § 2 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority [and] to Controversies . . ."); *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n, et al.*, 135 S.Ct. 2652, 2663 (2015). The strictures of Article III standing are by now "familiar." *United States v. Windsor*, 133 S.Ct. 2675, 2685 (2013). Standing requires (1) the plaintiff to have suffered an injury in fact that is both (a) concrete and particularized and (b) actual or imminent, as opposed to conjectural or hypothetical; (2) the injury must be traceable to the defendant's actions; and (3) the injury must be redressable by a favorable decision of the court. *See id*. at 2685-86 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-62 (1992)).

A federal court must assure itself of both constitutional and statutory subject matter jurisdiction. The former obtains if the case is one "arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." U.S. Const. art. III, § 2. The relevant statute, 28 U.S.C. § 1331, likewise confers jurisdiction upon lower courts to hear "all civil actions arising under the Constitution, laws, or treaties of the United States." Federal courts have constitutional and statutory "arising under" jurisdiction whenever a plaintiff's claim "will be sustained if the Constitution is given one construction and will be defeated if it is given another." *Powell v. McCormack*, 395 U.S. 486, 514-16 (1969)

(citing *Bell v. Hood*, 327 U.S. 678, 685 (1946) and *King Cnty. v. Seattle Sch. Dist. No. 1*, 263 U.S. 361, 363-64 (1923)) (internal alterations omitted).

### III. ANALYSIS

Mr. Gill brings three types of claims—Equal Protection (Counts I and V), Due Process (Counts II, IV, and VI), and improper use of FISA information (Count III).  This Court will address each type of claim individually.  The Equal Protection claims will be dismissed under Fed. R. Civ. P. 12(b)(6) because they were brought under the Fifth Amendment, rather than Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000*e*, but raise issues cognizable only under Title VII.  Mr. Gill's Due Process claims will be dismissed under Fed. R. Civ. P. 12(b)(1) and (6) because he lacks standing to bring them and failed to plead the necessary elements of such a claim.  Finally, the FISA claim will be dismissed under Fed. R. Civ. P. 12(b)(1) because the Court lacks subject matter jurisdiction and Mr. Gill lacks standing.

#### A. Venue

"A civil action in which a defendant is . . . an agency of the United States, . . . may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1).  The "residence" of an agency is determined by § 1391(c)(2), which states that an "entity with the capacity to sue and be sued in its common name under applicable law, . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Plaintiff asserts that venue is proper because both Defendants are within the District of

7

Columbia. Defendants raise no issues with Plaintiff's claim of venue. This Court holds that venue has been waived and the case remains in the District of Columbia.

### B. Equal Protection Claims (Counts I and V)

Mr. Gill alleges that Defendants violated the Equal Protection Clause of the Constitution[1] by basing the revocation of his security clearance on his race, religion, and national origin, and his family's national origin. However, as Defendants contend, Title VII provides the exclusive cause of action for review of these kinds of employment allegations of discrimination by federal employees. *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976). Defendants also argue that had Mr. Gill properly plead Title VII violations, those claims would not be subject to court review "because they seek to challenge the merits of an Executive Branch security clearance decision." Mot. at 9-11. Mr. Gill fails to respond to Defendants' argument concerning the exclusive nature of Title VII for his discrimination claims and instead focuses his opposition on the reviewability of security clearance decisions when constitutional questions are raised.

"[W]here a party files an opposition that addresses only *some* of the arguments raised in the underlying motion . . . it is well-established that courts may deem the unaddressed arguments as conceded." *Texas v. United States*, 49 F. Supp. 3d 27, 39-40 (D.D.C. 2014) (emphasis in original). Because Mr. Gill has failed to address the argument that his equal protection claims were improperly brought under the Constitution, rather than Title VII, the argument will be deemed conceded.

---

[1] "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V.

Indeed, it is clear that Title VII is the "'exclusive and pre-emptive' means for federal employees to seek redress for unlawful employment discrimination." *Howard v. Pritzker*, 775 F.3d 430, 433 (D.C. Cir. 2015) (quoting *Brown v. GSA*, 425 U.S. at 829). Mr. Gill is clearly a federal employee making claims of employment discrimination based on his race, religion, and national origin. Therefore, this Court must, as the Circuit before it, reject Mr. Gill's attempt to raise federal employment discrimination under the Fifth Amendment. *See Kizas v. Webster*, 707 F.2d 524, 541-43 (D.C. Cir. 1983). Mr. Gill's claims of discrimination by an agent of the federal government must be raised under Title VII, but the Complaint does not plead a Title VII violation or that Mr. Gill timely filed a Title VII charge.

Further, had Mr. Gill raised his discrimination claims under Title VII, they would also be subject to dismissal. Title VII does not authorize review of security clearance decisions made by the Executive, even when discrimination is alleged. Security clearance decisions "must be made by those with the necessary expertise in protecting classified information." *Dep't of Navy v. Egan*, 484 U.S. 518, 529 (1988). The agency that is responsible for an individual must have the discretion to determine if s/he should have access to classified information in the agency, as is it the agency that "'bear[s] the responsibility for the protection of classified information committed to his custody.'" *Id.* (citing *Cole v. Young,* 351 U.S. 536, 546 (1956)). "[I]t is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk." *Egan*, 484 U.S. at 529. "[T]he President's Article II Commander in Chief authority" is "a source of the Executive Branch's authority to control access to classified information." *Foote v. Moniz*, 751 F.3d 656, 658 (D.C.

Cir. 2014). "Thus, unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs." *Egan*, 484 U.S. at 529-30 (citing *Orloff v. Willoughby,* 345 U.S. 83, 93-94 (1953); *Burns v. Wilson,* 346 U.S. 137, 142, 144 (1953); *Gilligan v. Morgan,* 413 U.S. 1, 10 (1973); *Schlesinger v. Councilman,* 420 U.S. 738, 757-58 (1975); and *Chappell v. Wallace,* 462 U.S. 296 (1983)).

Mr. Gill's Equal Protection claims will be dismissed.

### C. Due Process Claims (Counts II, IV, and VI)

Mr. Gill alleges that Defendants violated his rights to Due Process by (1) withholding pertinent information gathered through FISA surveillance; (2) misapplying Guideline B of the Adjudicative Guidelines for Determining Eligibility for Access to Classified Information; and (3) delaying the decision appealing FBI's actions for almost five years. Defendants argue that these Due Process claims should be dismissed because Mr. Gill has no property or liberty interest at stake in a security clearance. Defendants reason that no deprivation of a right to Due Process occurred because Mr. Gill had no "right" to a security clearance in the first place. In Opposition, Mr. Gill agrees that a person does not have a property interest in a security clearance,[2] and instead argues that his liberty has been impacted through altered status and stigmatization, which has precluded him from continuing in his chosen profession. The liberty interest arguably at stake is Mr. Gill's ability to pursue his chosen profession. Defendants reply that Mr. Gill has failed to allege an infringement of any particular liberty interest.

---

[2] *See Egan*, 484 U.S. at 528 ("It should be obvious that no one has a 'right' to a security clearance. The grant of a clearance requires an affirmative act of discretion on the part of the granting official."); *Dorfmont v. Brown*, 913 F.2d 1399, 1404 (9th Cir. 1990) ("[A] claim for denial of due process stemming from the revocation of a security clearance is not a colorable constitutional claim.").

Although no one may hold a property interest in a security clearance, *see Doe v. Cheney*, 885 F.2d 898, 909 (D.C. Cir. 1989), a federal agency's revocation of a security clearance may give rise to a Due Process claim for injury to a liberty interest in reputation. *See Kartseva v. Dep't of State*, 37 F.3d 1524 (D.C. Cir. 1994) (recognizing that a government contractor's employee who was discharged after being disqualified by the Department of State may sue State for deprivation of a liberty interest without due process of law); *Doe v. Casey*, 796 F.2d 1508, 1522 (D.C. Cir. 1986). *Cheney* held that a plaintiff must show that the government "both altered his status and stigmatized his reputation" without due process of law in order to satisfy a claim for deprivation of a liberty interest. 885 F.2d at 910.

There are several ways in which the government may cause a change in status, including "discharging the employee, foreclosing the employee's future employment opportunities, or reducing the employee's rank or pay." *Casey*, 796 F.2d at 1523. "The loss of government employment is the paradigmatic 'status change' in liberty-interest jurisprudence." *Id*. This Court has addressed potential due process rights related to loss of a security clearance in *Ranger v. Tenet*, 274 F. Supp. 2d 1, 8-10 (D.D.C. 2003) and found that plaintiff had adequately alleged that the Central Intelligence Agency "did not afford [plaintiff] a meaningful opportunity to contest the basis for its decision to revoke his security clearance." *Id.* at 9

In the instant Complaint, Mr. Gill alleges that the "FBI permanently revoked his security clearance" in August 2008, and on August 18, 2008 he was informed of the FBI's "decision to terminate [him] for violating FBI policy against unauthorized searches of its computer systems." Compl. ¶ 24. The Complaint, therefore, alleges that his termination was the result of the same reasoning as that which caused the revocation of his security clearance, but not that the termination was a result of the revocation of his security clearance. The Access Review

Committee affirmed the revocation of Mr. Gill's security clearance because "Mr. Gill's admitted misconduct in accessing sensitive information for personal reasons involving his family raises straightforward concerns regarding his ability to safeguard classified information and not disclose it for personal reasons."  Compl., Ex. 1 at 4.

The Complaint and the Committee decision clearly state that Mr. Gill's termination resulted from his admitted violations of FBI policy against unauthorized searches, but not the revocation of his security clearance.  Mr. Gill's allegations concerning his Due Process rights are specifically tied to the proceedings regarding his security clearance.  There are no plausible allegations that the loss of his security clearance was the cause of his termination.  Mr. Gill cannot maintain a claim for deprivation of a liberty interest through loss of status.  For this reason, Mr. Gill fails to demonstrate a status change through discharge.

Mr. Gill also fails to allege a status change due to an alleged foreclosure from future employment because "the right 'to earn a living' does not extend to jobs requiring a security clearance." *Palmieri v. United States*, 72 F. Supp. 3d 191, 206-07 (D.D.C. 2014) (citing *Dorfmont*, 913 F.2d at 1403 ("If there is no protected interest in a security clearance, there is no liberty interest in employment requiring such clearance.")).  As a result, Mr. Gill's inability to find a job requiring a security clearance does not mean that he has suffered a deprivation of a cognizable liberty or property interest.

Mr. Gill's Due Process claims also fail because he has not alleged facts to support a stigma or reputational harm.  Under the second element of the liberty interest test discussed in *Cheney*, the plaintiff must show that the government stigmatized his reputation "by, for example, charging the employee with dishonesty, and that the stigma has hampered future employment prospects."  *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1111 (D.C. Cir. 1985).  In *Cheney*, the

12

D.C. Circuit held that the National Security Agency's (NSA) removal of a cryptographic technician for security reasons did not "appear to be stigmatizing because NSA did not make public accusations that will damage [his] standing and associations in the community." 885 F.2d at 910. *Cheney* noted that NSA had only disclosed the cryptographer's information to other federal agencies with whom NSA had tried to place him and with his consent. *See id.*

Mr. Gill argues that he has been defamed or stigmatized by statements made by FBI and/or DOJ that he was deceptive; he also argues that he is unaware of the extent of dissemination of the reasons for his termination. However, his Complaint contains no allegations that Defendants defamed Mr. Gill or acted in any way to stigmatize him. The Complaint merely states that "[d]uring the polygraph, Gill's answers proved to be deceptive." Compl. ¶ 20. "[T]o be denied [a 'top secret' clearance] on unspecified grounds in no way implies disloyalty or any other repugnant characteristic." *Casey*, 796 F.2d at 1523 (emphasis removed). Moreover, "[r]estricted disclosure of such material to other federal agencies, with clear limits on further distribution, is not stigmatizing and does not infringe upon constitutional liberty interests." *Cheney*, 885 F.2d at 910. Without factual allegations that Defendants defamed or stigmatized him, the Complaint has alleged no damage. *See, e.g.*, *Orange v. District of Columbia*, 59 F.3d 1267, 1274 (D.C. Cir. 1995); *Cheney*, 885 F.2d at 910 (agency's action not stigmatizing because agency made no "public accusations that will damage [plaintiff's] standing and associations in the community"); *see also De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 110 (D.D.C. 2012); *McDonald v. Salazar*, 831 F. Supp. 2d 313, 322 (D.D.C. 2011); *M.K. v. Tenet*, 196 F. Supp. 2d 8, 15 (D.D.C. 2001). No public disclosure has been alleged. For the above reasons, Mr. Gill's Due Process claims will be dismissed.

### D. FISA Claim (Count III)

Finally, Mr. Gill alleges that Defendants violated FISA § 106(c)[3] by failing to notify him of evidence gathered through electronic surveillance that was used against him in the Access Review Committee proceedings.  Defendants respond that Mr. Gill failed to identify a waiver of sovereign immunity that would permit him to sue the United States under § 106(c) of the FISA.  Defendants assert that even if there were a waiver of sovereign immunity, Mr. Gill failed to plead a cognizable injury-in-fact, so that he lacks standing to sue.  Mr. Gill retorts that sovereign immunity has been waived.  He relies on cases reviewing the legality of surveillance through a suppression hearing after the surveilled individual has been criminally charged.  Mr. Gill does not reference a particular statute or provision of FISA that waives sovereign immunity.

There must be a valid waiver of the United States' sovereign immunity for Mr. Gill to bring claims against an agency of the United States, as he does here.  *See Block v. North Dakota*, 461 U.S. 273, 287 (1983) ("The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress.").  The principles of sovereign immunity apply equally to federal agencies, officers, and employees acting in their

---

[3] Notification by United States.  Whenever the Government intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to the authority of this subchapter, the Government shall, prior to the trial, hearing, or other proceeding or at a reasonable time prior to an effort to so disclose or so use that information or submit it in evidence, notify the aggrieved person and the court or other authority in which the information is to be disclosed or used that the Government intends to so disclose or so use such information.

Foreign Intelligence Surveillance Act § 106(c), 50 U.S.C. § 1806(c) (2015).

official capacity.  *See Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994); *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  This exemption from suit is expressed in jurisdictional terms—that is, federal courts lack subject matter jurisdiction over suits against the United States in the absence of a clear waiver of sovereign immunity.  *See Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006) ("[A] plaintiff must overcome the defense of sovereign immunity in order to establish the jurisdiction necessary to survive a Rule 12(b)(1) motion to dismiss.").  Statutes that waive sovereign immunity are strictly construed and any doubt or ambiguity is resolved in favor of immunity.  *Lane v. Pena*, 518 U.S. 187, 192 (1996).

FISA itself does not address a waiver of sovereign immunity, but provides a civil cause of action against an individual who violates § 1809.[4]  Therefore, Mr. Gill's claim of waiver of sovereign immunity cannot be based on the text of FISA itself.

---

[4] Section 1809 is violated if a person intentionally:

> (1) engages in electronic surveillance under color of law except as authorized by this chapter, chapter 119, 121, or 206 of Title 18, or any express statutory authorization that is an additional exclusive means for conducting electronic surveillance under section 1812 of this title;

> (2) discloses or uses information obtained under color of law by electronic surveillance, knowing or having reason to know that the information was obtained through electronic surveillance not authorized by this chapter, chapter 119, 121, or 206 of Title 18, or any express statutory authorization that is an additional exclusive means for conducting electronic surveillance under section 1812 of this title.

50 U.S.C. § 1809(a).  FISA § 1810 provides a cause of action against an individual for "[c]ivil liability," but does not address the ability to sue the United States.  Section 1810 states:

> An aggrieved person, other than a foreign power or an agent of a foreign power, . . . who has been subjected to an electronic surveillance or about whom information obtained by electronic surveillance of such person has been disclosed or used in violation

15

The Patriot Act, 18 U.S.C. § 2712, authorizes suit against the United States for violations of certain provisions of FISA:

> Any person who is aggrieved by any willful violation of this chapter or of chapter 119 of this title or of sections 106(a), 305(a), or 405(a) of the Foreign Intelligence Surveillance Act of 1978 (50 U.S.C. 1801 et seq.) may commence an action in United States District Court against the United States to recover money damages. In any such action, if a person who is aggrieved successfully establishes such a violation of this chapter or of chapter 119 of this title or of the above specific provisions of title 50, the Court may assess as damages (1) actual damages, but not less than $10,000, whichever amount is greater; and (2) litigation costs, reasonably incurred.

18 U.S.C. § 2712(a). Section 2712 provides a cause of action for violations of FISA § 106(a), but does not extend to possible violations of § 106(c).[5] Mr. Gill is very clear that he "is not challenging the surveillance itself, or even the defendants' right to use the evidence gathered through the surveillance." Opp'n [Dkt. 13] at 22. Because Mr. Gill's claims are based on § 106(c) and courts read sovereign immunity waivers narrowly, *see Lane*, 518 U.S. at 192, this Court finds no waiver of sovereign immunity for Count III, which alleges a FISA violation.[6]

---

of section 1809 of this title shall have a cause of action against any person who committed such violation[.]

50 U.S.C. § 1810.

[5] The waiver in § 2712(a) of the Patriot Act applies to claims for monetary damages but not to claims for injunctive or other nonmonetary relief, which Mr. Gill is seeking.

[6] Mr. Gill's FISA claim also fails for lack of standing. Although Mr. Gill adequately claims a concrete injury—the loss of his security clearance—he fails to allege facts that link the loss of the security clearance to the alleged violation of FISA's notice requirement, or even to the use of information obtained through electronic surveillance under FISA. The facts alleged in the Complaint and the Access Review Committee's decision state Mr. Gill's security clearance was revoked because "Mr Gill's admitted misconduct in accessing sensitive information for personal reasons involving his family raises straightforward concerns regarding his ability to safeguard classified information and not disclose it for personal reasons." Compl., Ex. 1 at 4. Mr. Gill's misconduct was uncovered through a security unit interview, not electronic surveillance authorized by FISA.

Count III, alleging a violation of FISA, will be dismissed.

## IV.  CONCLUSION

Defendants' Motion to Dismiss [Dkt. 10] will be granted and the case dismissed.

A memorializing Order accompanies this Opinion.


Date: July 22, 2016                                        /s/
                                                    ROSEMARY M. COLLYER
                                                    United States District Judge